Patrick J. Cerillo, Esq.
Patrick J. Cerillo, LLC
4 Walter E. Foran Blvd., Suite 402
Flemington, NJ 08822
Attorney ID No. 01481-1980
T: (908) 284-0997
F: (908) 284-0915
pjcerillolaw@comcast.net
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD GIFFEN, STEVEN ROMANOWSKI, GEORGE ECKELMANN, AND GARY SCHOTLAND<br><br>Plaintiffs,<br><br>v.<br><br>BOROUGH OF FLEMINGTON, A MUNICIPAL CORPORATION, FLEMINGTON MAYOR PHIL GRIENER, FLEMINGTON COUNCILMAN BRIAN SWINGLE, FLEMINGTON COUNCILWOMAN BROOKE LIEBOWITZ-WARDEN, JEFFREY KLEIN, CONSTRUCTION OFFICIAL OF FLEMINGTON BOROUGH, JERRY ROTELLA, CHIEF OF POLICE, PATROLMAN R. GODOWN, AND JOHN DOES 1 THROUGH 5<br><br>Defendants. | **JURY TRIAL DEMANDED**<br><br>Civil Action No. _____<br><br>**COMPLAINT - ACTION FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS AND MALICIOUS PROSECUTION** |

1

Plaintiffs, Richard Giffen, Steven Romanowski, George Eckelmann and Gary Schotland sue Defendants and allege:

## Introduction

1.      This matter arises under United States Code 42 U.S.C. §§ 1983 et seq. as a civil action for deprivation of plaintiff's civil rights.

2.      The matter also arises pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.* and the New Jersey Law Against Discrimination, N.J.S.A. 10-5-1 *et seq.*

## Jurisdiction And Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 42 U.S.C. § 1983 (Civil action for deprivation of rights).

4.      Plaintiffs were each wrongfully charged with criminal trespass under N.J.S.A. 2C:18-3(a) by the Flemington Borough Police Department.

5.      Plaintiffs were wrongfully cited by the Borough of Flemington Construction Code Official, Jeffrey Klein, for entering an unsafe structure

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims

2

occurred in this District; and, (ii) the Defendants reside (and therefore can be found) in this District and resides in this State.

## Parties

7.    Plaintiff, Richard Giffen is a resident of Flemington, New Jersey is a licensed Professional Engineer and a structural engineer with experience of working with historic buildings including prior experience of working with the Union Hotel at 76 Main Street, Flemington, New Jersey. He is an associate of plaintiff, Steven Romanowski and was Vice Chair of the Flemington Historic Preservation Commission at the time this cause of action arose.

8.    Plaintiff Steven Romanowski is a resident of New Jersey and the principal owner of SAS, LLC the entity that owns the Union Hotel, a significant historic building located at 76 Main Street, Flemington, New Jersey and at the time this cause of action arose he was the owner of the adjacent Potting Shed building, a contributing historic building located at 78 Main Street, Flemington, New Jersey.

9.    Plaintiff George Eckelmann is a resident of Stockton, New Jersey is a licensed contractor and developer with experience in renovating historic buildings including the award-winning refurbishment of the Large House, a significant historic building, located at 119 Main Street, Flemington, New Jersey and is an associate of plaintiff, Steven Romanowski

10.    Plaintiff Gary Schotland is a resident of Flemington, New Jersey is an

engineer and developer with experience in renovating historic buildings including renovation of a contributing historic building located at 123 Main Street, Flemington, New Jersey. At the time this cause of action arose he was an associate of plaintiff, Steven Romanowski and a trustee of the Friends of Historic Flemington, a not-for-profit historic preservation advocacy group.

11.    Defendant Borough of Flemington is a municipal corporation of the State of New Jersey

12.    Defendant Phil Greiner was the Mayor of Flemington at the time this cause of action arose and is a resident of New Jersey.

13.    Defendant Brian Swingle was a councilman for Flemington Borough at the time this cause of action arose and is a resident of New Jersey.

14.    Defendant Brooke Liebowitz-Warden was a councilwoman for Flemington Borough at the time this cause of action arose and is a resident of New Jersey.

15.    Jeffrey Klein is and was the Construction Code Official for Flemington Borough at the time this cause of action arose and is a resident of New Jersey.

16.    Jerry Rotella is and was the Chief of Police of Flemington Borough at the time this cause of action arose and is a resident of New Jersey.

17.    Patrolman R. Godown is and was a police officer for the Borough of Flemington at the time this cause of action arose and is a resident of New Jersey.

**Factual Background**

18.     At the time this cause of action arose, Plaintiff Steven Romanowski was the first mortgage holder of a mortgage and promissory note against real estate known as the Union Hotel, designated as Lot 4, Block 22, on the Tax Maps of the Borough of Flemington, Hunterdon County, New Jersey, and commonly known as 76 Main Street, Flemington, New Jersey.

19.     The owner of the Union Hotel was Flemington Union Hotel, LLC, whose managing members were Liam Burns and Matthew McPherson.

20.     The mortgage held by plaintiff Steven Romanowski provided among other rights, that upon default by the mortgagor, the mortgagee has the right "to take possession of and manage the Property, including the collection of rents and profits".

21.     In February 2015, the Flemington Union Hotel, LLC was in default of the mortgage with Steven Romanowski and lawsuits were filed both for foreclosure and for the money owed under the promissory note. Flemington Union Hotel, LLC was properly served with both the foreclosure complaint and the law division complaint for the breach of the payment terms of the promissory note to Steven Romanowski.

22.     Having been served with the complaints in foreclosure and for the money damages suit, the Flemington Union Hotel, LLC had actual notice of the

rights of Steven Romanowski to take possession of and manage the real estate of the Union Hotel property.

23.    Between 2015 and 2016, plaintiff Steven Romanowski was given a key by members of the Flemington Union Hotel, LLC, providing him with free access to the Union Hotel.

24.    Defendants Mayor Greiner, councilman Swingle and councilwoman Liebowitz-Warden, hereinafter called the "Committee" defendants have been opposed to the opinions and suggestions of the plaintiffs to preserve and protect the Union Hotel, which is a significant historic building. They have made their political views public on various occasions. The Committee defendants did not want the actual condition of the building to become known to the public as the Committee defendants had previously stated it was beyond repair, not worth preserving and the Borough of Flemington had failed to enforce municipal ordinances requiring it to be maintained despite repeated requests from the public to do so. They did not want plaintiff Romanowski to preserve and protect or redevelop the building. They wanted the building to deteriorate and for plaintiff Romanowski to sell the building to their favored redeveloper who wanted to demolish the building.

25.    On April 12, 2016 Plaintiff Richard Giffen sent an email to the Committee defendants requesting the Borough enforce the municipal ordinances that state that a building owner shall maintain and protect the structure of an historic

building and the Boroughs code official shall issue violations when the owner fails to comply. The other plaintiffs and other members of the public have also urged the Committee defendants to enforce these ordinances to prevent deterioration of the historic building.

26.    The Committee defendants refused to enforce the ordinances as they wished the building to deteriorate to suit their plans for redevelopment and specifically to assist their favored redeveloper who wished to demolish the historic building.

27.    At the time this cause of action arose plaintiff Steven Romanowski was the holder of the first mortgage against the Union Hotel historic building at 76 Main Street, Flemington, New Jersey.

28.    On December 4, 2017 plaintiff Romanowski presented conceptual plans to the Planning Board of Flemington Borough outlining his proposals for the redevelopment of the Potting Shed property. He made it clear he was considering redeveloping both the Potting Shed and Union Hotel properties.

29.    The Committee defendants were opposed to plaintiff Romanowski's plans for redevelopment as they wanted him to sell both properties to their favored redeveloper who wished to demolish both historic buildings to allow for a future development.

30.    Due to the political animosity of these Committee defendants the

plaintiffs have been harassed and intimidated in various ways since 2016.

31.    On December 7, 2017 the plaintiffs met at the Union Hotel as plaintiff Steven Romanowski scheduled a meeting with the other plaintiffs herein to enter and inspect the Union Hotel. Plaintiff Steven Romanowski had the absolute right to enter the Union Hotel pursuant to the terms of the defaulted mortgage with the owner of the Union Hotel. The other plaintiffs had the absolute right to enter the Union Hotel as plaintiff Steven Romanowski assured them, he had the legal authority to take them in to the property.

32.    The plaintiffs were there to inspect the condition of the Union Hotel and to determine the structural integrity of the building and to advise plaintiff Steven Romanowski on what repairs may be required.

33.    The plaintiff, Richard Giffen took video of the inside of the Union Hotel on December 7, 2017.

34.    On December 7, 2017, at the request of plaintiff Romanowski and with the agreement of the other plaintiffs, plaintiff, Richard Giffen posted on Facebook a video showing the condition of the inside of the Union Hotel within the Facebook group "Save the Union Hotel".

35.    Upon information and belief, defendant councilman Brian Swingle found out that the plaintiffs had entered the Union Hotel on December 7, 2017 and had posted a video on Facebook.

36.    Upon information and belief, on December 7, 2017, defendant councilman Brian Swingle contacted defendant Jeff Klein, the construction and code official of Flemington Borough and instructed him to contact the police to "go after the plaintiffs" and to have them charged with criminal trespass and entering an unsafe structure and to get the video taken down.

## False Criminal Charges

37.    On December 8, 2017, defendant Klein contacted the Flemington Borough Police and requested assistance from the police reporting, and misrepresenting to the police, that plaintiffs had entered the Union Hotel without authorization.  Defendant Klein requested the police assist him to place an unsafe structure notice on the front door of the Union Hotel.

38.    At all times relevant hereto defendant Police Chief Jerry Rotella was responsible for the supervision and training of Patrolman R. Godown.  Chief Jerry Rotella failed to properly train and manage Patrolman R. Godown in that Patrolman Godown failed to properly investigate the case and failed to understand the law of due process and probable cause and wrongfully brought charges against plaintiffs without probable cause.

39.    The defendant, Patrolman R. Godown commenced an investigation into

an alleged criminal trespass allegation. Patrolman Godown interviewed plaintiff Steven Romanowski. Patrolman Godown asked plaintiff Romanowski if he had permission to enter the Union Hotel.

40.    Plaintiff Romanowski attempted to show Patrolman Godown a copy of his mortgage that provides the right of possession and management of the property. Plaintiff Romanowski brought other documents with him to show the defendants that he had the absolute right to possession and management of the Union Hotel. However, neither defendant Godown, defendant Klein or defendant Chief of Police Jerry Rotella wanted to examine the mortgage document or other documents of plaintiff Romanowski.

41.    Upon information and belief, the defendants Chief Rotella, Patrolman Godown and Jeffrey Klein refused to examine the documents of plaintiff Romanowski because they were instructed by councilman Swingle and the other Committee defendants to go after the plaintiffs.

42.    Plaintiff, Steven Romanowski provided a written statement to the Flemington Borough Police Department stating that his mortgage provides the right to enter the Union Hotel.  Despite this information the police failed to examine the mortgage document, or the settlement agreement signed by the owners and plaintiff Steven Romanowski.

43.    On or about December 10, 2017 defendant councilman Brian Swingle

posted misinformation on Facebook and provided misinformation to the Police and construction official Klein that the plaintiffs did not have permission to be at the Union Hotel on December 7, 2017 and that plaintiff Giffen was not a qualified structural engineer.

44.    On December 11, 2017 defendant patrolman Robert Godown contacted plaintiff Richard Giffen by telephone while plaintiff Giffen was overseas in London, England. Defendant Godown asked plaintiff Giffen if he was the person who had posted a video of the hotel on Facebook.  Plaintiff Giffen confirmed that he was. Defendant Godown said that he should not have done that as he may not have had authority to be in the building. Plaintiff Giffen advised he had authority from plaintiff Romanowski who had a key and told him he had authority to take him in. Defendant patrolman Godown stated that plaintiff Romanowski may not have had authority. Plaintiff Giffen stated that was news to him and asked how that affected him as plaintiff Romanowski had assured him that he had authority. Defendant Godown stated "If you were walking down the street with a friend and he asked you to get into a car, you wouldn't, would you?". Plaintiff Giffen replied; "I would if he told me it was his car, he had the key and he got in first". Defendant Godown stated that he needed plaintiff Giffen to come into the police station to make a formal statement. Plaintiff Giffen agreed to do this after his return from overseas on December 18, 2017. Plaintiff Giffen complained to Defendant Godown that

11

Defendants Councilman Swingle and Councilwoman Liebowitz-Warden were posting misinformation on Facebook and asked Defendant Godown to include this in his investigation.

45.   On or about December 12, 2017 defendant councilwoman Brooke Liebowitz-Warden posted misinformation on Facebook that the plaintiffs did not have permission to be at the Union Hotel on December 7, 2017 and that they were about to be arrested, and that plaintiff Giffen could lose his structural engineer's license. At the time of that posting on Facebook, the police had not yet charged the plaintiffs with any complaints, yet councilwoman Liebowitz-Warden knew it was coming.

46.   Patrolman R. Godown, with approval from the other defendants filed false criminal charges against each of the plaintiffs for criminal trespass.

47.   On December 12, 2017 Patrolman Godown filed charges against plaintiff Richard Giffen and plaintiff Steven Romanowski but did not even interview plaintiff Giffen until December 28, 2017.

48.   On December 20, 2017 during a telephone call plaintiff Giffen asked defendant Godown why he had filed charges before conducting a formal interview. Defendant Godown replied "sorry about that, I had to get it off my desk".

49.   On December 28, 2017 plaintiff Giffen attended Flemington Borough Police Station along with his attorney Franklin Whittlesey. Plaintiff Giffen explained

12

to defendant Patrolman Godown that he was in the property with authority and for the purpose of inspecting the building structure. Plaintiff Giffen provided a written statement to this effect. Plaintiff Giffen requested defendant Godown withdraw charges. Defendant Godown stated it was too late now and up to the Municipal Prosecutor. Defendant Godown promised to explain and 'put in a good word' with the Municipal Prosecutor. Defendant Godown stated he had received a lot of information from defendant councilman Swingle in the form of emails and minutes of meetings. Plaintiff Giffen stated that these could not have anything to do with all this. Defendant Godown stated he was hopeful that defendants councilman Swingle and councilwoman Liebowitz-Warden would stop posting about this on Facebook.

50.    On January 4, 2018 Patrolman Godown filed charges against plaintiff Gary Schotland and plaintiff George Eckelmann but did not interview either plaintiff at all.

51.    On or about January 17, 2017 plaintiffs were advised that the Municipal Prosecutor had recused himself from the case as he had determined that the charges were baseless and politically motivated.

52.    The plaintiffs first appearance in Flemington Municipal Court was on February 26, 2018. Plaintiffs presented copies of the mortgage documents that proved plaintiffs had the absolute right to be in the building and requested that the court dismiss all charges. The Municipal Judge stated he was unable to consider this

request as he had no prosecutor. He advised that the Municipal Prosecutor had recused himself and he needed to find a new prosecutor to review the case. In an unusual move the court ordered the plaintiffs to report to Flemington Police Station to be fingerprinted, photographed and arrested.

53.     From information obtained through discovery and the Open Public Records Act, the police failed to conduct a proper investigation and defendants Councilman Swingle and Code Official Klein provided false information to the police.

54.     Flemington Borough Police Department incident report #17187139 dated December 8, 2017 page 3 of 4 and 4 of 4 states that the police did not even speak with the building owner, Liam Burns.

55.     Documents obtained through discovery demonstrate that defendant Councilman Swingle provided the police with deliberately misleading information to persuade them to file charges. He provided emails and minutes of Flemington Borough Council meetings and advised the police that these showed that plaintiffs knew they should not be in the hotel. This was a false and malicious statement. Defendant Swingle deliberately, selectively and maliciously misrepresented previous events to cause harm to the plaintiffs.

56.     The events documented in the emails and minutes related to a previous planned visit to the hotel as detailed by the following;

57.    On May 8, 2017 at a Borough Council meeting defendant Councilman Swingle announced that the favored redeveloper was now proposing to preserve the Union Hotel and therefore the Borough was planning to enforce the ordinances to require the current owner to maintain and protect the structure. He requested plaintiffs Giffen and Eckelmann to provide free assistance to defendant code official Klein in assessing what repairs may be required. Plaintiffs Giffen and Eckelmann agreed to do so and defendant Swingle agreed to schedule a visit to the building to inspect its condition.

58.    An email exchange of May 16, 2017 indicated defendant Councilman Swingle planned to schedule a meeting the following week 'to see what options may exist to protect the roof for now'.

59.    On May 21, 2017 a media article clarified that the favored redeveloper was not actually planning to preserve the whole of the Union Hotel, only some parts of the exterior walls. He still planned to demolish the remainder.

60.    On June 12, 2017 at a Borough council meeting defendant Councilman Swingle stated that the Borough was now not enforcing ordinances to require the building owner to maintain the structure. When challenged by members of the public he gave various implausible and obviously contrived reasons.

61.    On June 13, 2017 plaintiff Giffen sent an email to defendant Councilman Swingle complaining that the reasons given for not enforcing the

ordinances were contrived and this was being done to benefit a developer to the detriment of the Borough residents and against the wishes of the general public. Plaintiff Giffen received no response to this email.

62.     Defendant Godown failed to undertake a full investigation. He failed to investigate these previous events and the status of the construction violations issued by defendant Klein in May 2015.

63.     From information obtained through the Open Public Records Act the only unsafe structure notices that have been issued against the Union Hotel by defendant code official Klein were the notices issued to the building owner on May 6, 2015. These related to bricks having fallen from the south and rear exterior facades. The building owner was given until May 21, 2015 to address these defects. As there is no subsequent documentation or indication of further related violations or penalties for failing to address these notices, these defects must have been addressed and the building could not have been declared unsafe or condemned based on the May 6, 2015 notices. If the building had been condemned as unsafe, appropriate notices should have been issued and fixed to the building by defendant code official Klein. This was not done.

64.     Media reports from June 2015 quote defendant Klein as stating he had issued violations for bricks falling from the exterior walls in May 2015, but that the building was 'not about to collapse'. He promised to make sure these and other

16

defects would be repaired and that the violations would be addressed. The media articles quote defendant councilman Swingle as declaring the building as needing some exterior repairs but to be 'structurally sound'. They indicate that the building could not have been noticed as unsafe based solely on the May 2015 violations as these must have been addressed or further documentation generated.

65.   Flemington Borough Police Department incident report #17187139 dated December 8, 2017 page 3 of 4 states that defendant code official Klein told the police that the building was a condemned building based on a Notice of Imminent Hazard and Notice of Unsafe Structure dated May 6, 2015 and that nobody should be in the building without proper approvals from the building owner, code official and fire marshal. This was a false statement which a cursory inspection of the documentation and questioning of defendant Klein would have revealed. The building was not noticed as an unsafe structure and plaintiffs did not need permission from the code official or fire marshal.

66.   The police knew that there was no unsafe structure notice on the building on December 7, 2017 as they assisted defendant Klein posting a notice on December 8, 2017.

67.   Flemington Borough Police Department incident report #17187139/2 dated January 8, 2018 page 4 of 4 states that 'all subjects were charged with trespassing, due to the building being a condemned building, secured building with

fencing around the exterior'. This was not a valid reason for charging plaintiffs with trespassing. There was no valid notice of condemnation, there was no complaint or statement from the building owner and plaintiffs had explained that they had full authority to be in the property and entered the property with a key provided by the owner. There was no probable cause for trespass.

68.    The defendants, under the guise of State authority violated the plaintiffs' civil rights by causing to be filed frivolous criminal complaints against each of the plaintiffs.

69.    The police filed charges against the plaintiffs based on false information supplied by defendants Swingle and Klein. The police knew this information to be false but filed charges anyway. There was no basis for trespass and no basis for claiming they were entering an unsafe structure without permission. These charges were filed deliberately and maliciously to harm and intimidate plaintiffs.

70.    From information obtained through the Open Public Records Act the police had knowledge of other persons inside the Union Hotel before and after December 7, 2017 and chose not to file charges.

71.    On March 18, 2016 police discovered seven persons had entered the hotel. Through information and belief, the police determined that these persons had broken into the hotel without permission and caused criminal damage. During their

18

investigations the police determined that one of the persons apprehended was a family member of defendant councilwoman Brooke Liebowitz-Warden and chose not to file charges.

72.     On April 18, 2018 the police received a complaint from the owner and plaintiff Romanowski that persons were inside the building without his permission. The police investigated and determined that the persons did not have permission but chose not to file charges as they determined that they "believed they entered the building legally".

73.     The foregoing conduct of the defendants in causing to be filed criminal charges against plaintiffs was a violation of civil rights of the plaintiffs pursuant to 42 USC section 1983.

**<u>False Construction Violations</u>**

74.     On or about January 19, 2018 defendant Jeffrey Klein filed complaints against each of the plaintiffs for construction code violations for violating an unsafe structure notice. At the time that defendant Jeffrey Klein filed these charges against the plaintiffs he knew that on December 7, 2017, there was no visible notice of unsafe structure posted at the Union Hotel.  He wrongly and deliberately dated the violations as occurring on December 8, 2017 to coincide with the unsafe structure

notice that he placed on December 8, 2017.

75. At the time the plaintiffs entered the Union Hotel on December 7, 2017 there was no visible posted notice on the outside of the Union Hotel informing the general public that this was an unsafe structure.

76. Despite the lack of prior notice of unsafe structure, Jeffrey Klein intentionally and knowingly filed false charges against the plaintiffs for these alleged construction code violations.

77. Upon information and belief, on or about April 16, 2018, 2 days prior to the scheduled Construction Board of Appeals hearing, the defendants Chief Rotella and Jeffrey Klein proposed to withdraw all charges but were blocked from doing so by defendant Mayor Greiner.

78. On April 18, 2018 at the Construction Board of Appeals all the construction code violation charges were dismissed. Defendant Klein freely admitted that there was no unsafe structure notice in place on December 7, 2017. Defendant Klein admitted that he had not issued any unsafe structure notices except the May 6, 2015 notices related to bricks falling from the south and rear facades. He admitted that he had not issued any notices related to the insides of the building. There were no valid unsafe structure notices that would prevent plaintiffs from entering the building. The Construction Board of Appeals determined that defendant Klein should not have issued construction code violations against the plaintiffs.

79.     During the Construction Board of Appeals hearing on April 18, 2018 defendant Klein stated that the May 6, 2015 notice of unsafe structure violations had not been addressed. This claim must have been false as he had previously stated it would be addressed and had been addressed and he imposed no further violations, deadlines or penalties to the owner. In addition, he allowed the south wall to remain unfenced and accessible to the public. If the May 6, 2015 notices had not been addressed as defendant Klein claimed on April 18, 2018 this was a dangerous and reckless act.

80.     During the Construction Board of Appeals hearing on April 18, 2018 defendant Klein stated that red spray paint X's had been marked on the building to replace formal fire placards that had been covered up and these spray paint X's were adequate notice to prevent plaintiffs from entering the building. The Construction Board of Appeals completely rejected this argument. The Board ruled that the red spray paint X's had absolutely no meaning or relevance to the public or the plaintiffs and defendant Klein must have known this.

81.     From information obtained through the Open Public Records Act the fire placards that were not visible on December 7, 2017 were placed on the building by the fire marshal in July 2012. The fire placards display only symbols with no text and are intended to provide information to the fire services only. In the event of a fire, they help the fire services decide what precautions may be required if they

choose to enter the building. They mean nothing to anyone except the fire services so even if they had been visible, they would not have prevented plaintiffs from entering the building and defendant code official Klein must have known this.

82.     The unsafe structure notice that was placed on the hotel on December 8, 2017 was a "Do not occupy" notice. So even if this notice had been in place on December 7, 2017 it would not have prevented plaintiffs from entering as they were not there to occupy and defendant code official Klein must have known this.

83.     Even if a valid unsafe structure notice had been in place on the building on December 7, 2017 the Uniform Construction Code permits persons to enter the building for the purpose of assessing and making repairs so the plaintiffs would have had the absolute right to enter the property and defendant code official Klein must have known this.

84.     From information obtained through the Open Public Records Act defendant Klein had previously allowed members of the public to freely access the building without requiring them to obtain his prior approval or challenging their authority to be in the building or claiming that the building was condemned and not safe for them to enter.

85.     In an email exchange of July 16, 2016 defendant Klein contacted members of the public who he noted must have been inside the building to place political signs. Defendant Klein requested they go back inside to remove them. He

made no mention of any requirement to obtain permission from anyone or the building being condemned or unsafe to enter. The persons agreed to re-enter the building.

86.   The foregoing conduct by defendant Klein constitutes civil rights violations pursuant to 42 U.S.C. section 1983.

## Intimidation and Suppression of Freedom of Speech

87.   To further violate the plaintiff's free speech and other civil rights the defendants Chief Rotella and Patrolman Godown on December 8, 2017 and December 11, 2017 pressured the plaintiffs to remove from Facebook the video of the inside of the Union Hotel. This was the first contact the plaintiffs had with the defendants and the removal of the video was the obvious primary concern of the defendants. The plaintiffs feared further retaliation from the defendants and therefore submitted to these coercive tactics and removed the video from Facebook.

88.   On or about December 10, 2017 defendant councilman Swingle made multiple malicious posts on public Facebook pages concerning plaintiff Giffen including "…I personally do not believe this was done legally…. he's not a structural engineer…. he's a Professional Engineer, not a Structural Engineer. Becoming a SE after being a PE takes additional training and certifications…he's not a licensed SE

23

in NJ and that's a fact." These were deliberately false and malicious statements intended to cause harm to plaintiffs.

89.    On or about December 12, 2017 defendant councilwoman Liebowitz-Warden posted on public Facebook pages "The person that posted this video wasn't hired by the owner. He didn't do a complete inspection. He didn't have permission to be there. The owner is pressing charges for trespassing and people will be arrested and booked and fingerprinted and have to go to court for this. This isn't a joke. Its sad that this has come to people trespassing and possibly losing their licenses. This affects families and their livelihoods and is just shameful in general." This was a deliberately false and malicious statement intended to cause harm to plaintiffs.

90.    On January 4, 2018 defendant Mayor Greiner made it known that unless plaintiff Giffen immediately resign from his role as Vice Chair of the Flemington Historic Preservation Commission, defendant Mayor Greiner would make use of the charges that had been filed to terminate him from this role. Plaintiff Giffen was forced to resign due to this political intimidation.

91.    On January 4, 2018 plaintiffs became aware of a letter dated January 2, 2018 from the New Jersey Department of Environmental Protection State Historic Preservation Office (SHPO). This provided a response to Flemington Boroughs application to sell an historic property it owns at 90-96 Main Street to their favored redeveloper. The letter indicates that the Committee defendants informed SHPO that

24

the internal structure of the Union Hotel building was beyond repair, but the facades could be saved provided SHPO granted the sale of 90-96 Main Street to the designated developer. The letter indicates that the Committee defendants were in communication with SHPO on December 11, 2017 and December 18, 2017 and provides further cause for the Committee defendants' actions in intimidating plaintiffs to take down the video showing the actual condition of the inside of the hotel around this time.

92. The Committee defendants wished to intimidate plaintiff Romanowski into selling the Union Hotel and Potting Shed historic properties to their favored redeveloper.

93. The Committee defendants further intimidated plaintiff Romanowski into selling the Union Hotel and Potting Shed historic buildings to their favored redeveloper. They publicly stated that he would not obtain planning permission for his own redevelopment plans and if he did not sell these buildings, they would use Eminent Domain to force him to sell them at a lower price than he might otherwise obtain.

94. Plaintiff Romanowski was eventually intimidated and forced into selling these historic properties to the committee defendants favored redeveloper.

95. The Committee defendants wished to intimidate the plaintiffs to stop them from speaking publicly about the condition of the Union Hotel and how it could

be protected and preserved and from challenging the committee defendants and code official's failure to enforce the municipal ordinances that require historic buildings to be protected and preserved.

96.    Plaintiffs were intimidated and forced to stop speaking freely about the Union Hotel.

97.    The foregoing conduct by defendants constitutes civil rights violations pursuant to 42 U.S.C.  section 1983.

## Miscellaneous

98.    On or about May 29, 2018 plaintiffs received letters from the County Prosecutor stating that he had reviewed the case and was dismissing all charges. In prior phone calls to plaintiffs' attorneys, the County Prosecutor admitted that he was dismissing the charges as there was no case to answer.

99.    On January 14, 2019 the plaintiffs appeared in Flemington Municipal Court and all trespass charges were formally dismissed.

100.    On February 7, 2019 the County Prosecutor issued an order for expungement of all charges against plaintiffs.

101.    All of the criminal charges and all of the construction code violation charges were dismissed against all of the plaintiffs.

26

102. The foregoing conduct by defendants constitutes civil rights violations pursuant to 42 U.S.C. section 1983.

103. All conditions precedent to bringing this action have occurred or been waived.

104. Plaintiffs have had to retain various legal counsel to defend against these false charges and are entitled to reasonable fees for the within matter.

105. Plaintiffs have suffered damage to reputation, embarrassment, out of pocket expenses, loss of earnings, loss of personal time, loss of beneficial use, distress and suffering.

## COUNT I
### Violation of Plaintiff's Civil Rights by Defendants

106. The allegations contained in paragraphs 1-105 are hereby re-alleged as if fully set forth herein.

107. Defendant's actions against plaintiffs were committed "willfully" and for political purposes and not for any lawful purpose within the meaning of 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)    Award Plaintiffs damages pursuant to 42 U.S.C. § 1983;

(B)    Award Plaintiffs punitive damages;

(C)    Award Plaintiffs its reasonable attorneys' fees and costs pursuant to 42

27

U.S.C. § 1983; and

(D)    Grant Plaintiffs any other and further relief this Court deems just and proper.

## COUNT II

## <u>Malicious Prosecution by Defendants</u>

108.   The allegations contained in paragraphs 1 through 105 are hereby re-alleged as if fully set forth herein.

109.   The conduct of all the defendants in this action constitute malicious prosecution against the plaintiffs.

110.   The plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs   respectfully request that the Court:

(A)    Award Plaintiffs damages;

(B)    Award Plaintiffs punitive damages;

(C)    Award Plaintiffs its reasonable attorneys' fees and costs; and

(D)    Award Plaintiffs any other and further relief as this Court deems equitable and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

By:  /s/ *Patrick J. Cerillo*
Patrick J. Cerillo, Esq.
Patrick J. Cerillo, LLC
4 Walter E. Foran Blvd., Suite 402
Flemington, NJ 08822
Attorney ID No. 01481-1980
T: (908) 284-0997
F: (908) 284-0915
pjcerillolaw@comcast.net
*Attorney for Plaintiff*

29